**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY McKINNEY,             )<br>                                              )<br>          Plaintiff,                  )<br>                                              )<br>v.                                          )<br>                                              )<br>T. CASEY, et. al.                 )<br>                                              )<br>          Defendants.            )<br>_____)  | No. 1:04–CV–06030–SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

Pending before the Court is Defendants Toby Casey and Sherry Buentiempo's ("Defendants") Motion for Summary Judgment (Dkt. 76). Plaintiff Gregory McKinney ("Plaintiff") filed a Response (Dkt. 83), Defendants filed a Reply (Dkt. 86), and the matter is now fully briefed.[1]

## BACKGROUND[2]

---

[1] After briefing had been completed, Plaintiff filed supplementary exhibits with the Court (Dkt. 88). As Defendants have not objected to these exhibits, the Court will consider them in determining whether summary judgment is appropriate.

[2] This Court uses Defendants' version of the facts in the Background section. Although Plaintiff disputes many of Defendants' facts, Plaintiff does not present his own version of the facts. Rather, Plaintiff merely copies each of Defendants' stated facts and responds in one of two ways: (1) "Plaintiff does not disputed Defendants No. 1" or (2) "Plaintiff does disputed Defendants No. 4 as follows and stated there existed genuine issues for trial." (See Dkt. 83-2, ¶ 1, 4). However, Plaintiff gives no information regarding why he disputes these facts or how his own version of the facts differs from Defendants'. Plaintiff has failed to offer a statement laying out the facts as he alleges them.

Defendants' motion for summary judgement responds to Plaintiff's Fourth Amended Complaint filed July 17, 2007 (Dkt. 37, Pl.'s Compl. 4th Am.).[3] The Complaint alleges that Defendants "acted and deprived Plaintiff's McKinney's liberty to receive ten (10) hour (sic) [outside]....as described in the defendants State of California Rules Title 15. Section 3343 Pg. 136. (H) (Id. 3:11, 4:1-7)."[4] Plaintiff specifically asserts three claims. First, Plaintiff claims that defendants knew or should have known that by "intentionally denying plaintiff grievance to appeal for wanting to receive outdoor at security house unit" he would suffer for two and a half years in his cell, violating the Eighth Amendment (Id. 4:22-24). Second, Plaintiff alleges that Defendants' denial of adequate exercise and recreation constitutes cruel and unusual punishment (Id. 5:3-6). Third, Plaintiff claims that failure "to properly supervise and train subordinate correctional department counselors...violat[es] the Eighth Amendment (Id. 5:15-22)." Plaintiff seeks monetary damages under 42 U.S.C. § 1983 for a violation of his Eighth Amendment rights (Id. 5:24-6:5).

When the alleged violations occurred, Plaintiff was a prisoner incarcerated at California Correction Institution ("CCI") in Tehachapi, California, and Centinela State Prison in Imperial, California (Dkt. 76-2, Def.'s Statement of Facts ("DSF"), ¶ 1). Defendants Casey and Buentiempo worked as Plaintiff's correctional counselors while Plaintiff was housed at Facility IV A in CCI (Id. ¶ 3). While in Facility IV A, Defendants "did not have the authority to regulate the amount of outdoor exercise time" Plaintiff received (Id. ¶ 7). "Correctional officers...facilitated the amount of exercise time available" to Plaintiff (Id. ¶ 8).

---

[3] The District Court must notify a prisoner of the requirements under Rule 56 to defeat a motion for summary judgment. Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988). On September 6, 2007, Honorable Magistrate Judge Wonderlich did this by issuing the "Second Informational Order, Motion to Dismiss Notice, and Summary Judgment Notice," which contains the required Rand and Wyatt warnings (Dkt. 43, 2d. Info. Order).

[4] Although Plaintiff numbers the lines differently in his Fourth Amended Complaint, the Court's citations refer to the lines numbers on the pleading paper itself.

1    Defendants analyzed Plaintiff's central file, met with him, and prepared a housing
2    placement and exercise yard status recommendation (Id. ¶ 4). Defendants made housing
3    placement and yard status recommendations to the Institutional Classification Committee
4    ("ICC") based on Plaintiff's offenses and prison behavior record (Id. ¶¶ 5-6). The ICC then
5    made the final determination on Plaintiff's housing placement and yard status (Id. ¶ 6).

6    On October 5, 2000, while housed at Centinela State Prison, Plaintiff received a rules
7    violation report for battery on a peace officer with a weapon (Id. ¶ 9). Consequently,
8    Plaintiff received a term of forty-eight months in the Security Housing Unit ("SHU") (Id.
9    ¶ 10). Upon arriving at CCI in January 2001, Plaintiff was housed in Facility IV A at CCI
10   and assigned to single-cell and walk-alone yard status (Id. ¶¶ 11-12, 16). On April 10, 2001,
11   the ICC held a hearing to determine Plaintiff's housing placement and exercise yard status.
12   As Plaintiff's correctional counselor, Defendant Buentiempo attended the hearing and offered
13   her recommendation regarding Plaintiff's housing placement (Id. ¶¶ 13-14). Considering
14   Plaintiff's disciplinary record and security threat to other inmates, the ICC kept Plaintiff on
15   single-cell and walk-alone yard status (Id. ¶¶ 15, 17).

16   Plaintiff returned to Centinela State Prison on May 2, 2002 where he faced criminal
17   prosecution for his prior charge of battery on a peace officer with a weapon (Id. ¶ 19). On
18   June 16, 2002, while housed at Centinela, Plaintiff received another rules violation report for
19   battery on a peace officer (Id. ¶ 20). Upon Plaintiff's return to CCI on January 27, 2003,
20   Defendant Casey served as Plaintiff's correctional counselor (Id. ¶¶ 21,23). Prior to
21   Plaintiff's next ICC hearing, Defendant Casey met with Plaintiff (Id. ¶ 24). Plaintiff
22   "requested to remain on walk-alone yard and single-cell status" (Id.). During the hearing on
23   February 11, 2003, Defendant Casey presented her recommendations to the ICC (Id. ¶ 25).
24   In reaching its decision, the ICC considered Plaintiff's forty-eight month term in the SHU
25   for battery on a peace officer with a weapon and threats made to other inmates in November
26   2001 (Id. ¶ 26). Due to Plaintiff's history of violence and his own request, the ICC placed
27   Plaintiff on single-cell and walk-alone yard status within the SHU (Id. ¶ 27).
28

1    CCI assigns inmates with the highest security risk to walk-alone yard and single-cell
2    status (Id. ¶ 29). Prison officials release these inmates in the yard one at a time, with a single
3    supervising officer (Id. ¶¶ 29, 32). Space and security constraints required walk-alone and
4    group exercise inmates to use the same yard  (Id. ¶ 34). CCI constructed thirty-two
5    individual exercise modules that allow multiple walk-alone inmates to access the yard at one
6    time (Id. ¶ 38). The prison completed the modules by June 2003 (Id. ¶ 39).
7     Because of staff and lighting concerns, CCI did not allow staff to supervise outdoor
8    exercise between 3:30 p.m. and 7:30 a.m (Id. ¶ 35). Weather, facility-wide investigations
9    and other factors influenced when outdoor exercise was available (Id. ¶ 36).
10    Plaintiff had seventeen opportunities for outdoor exercise between January 2001 and
11   May 2002; he refused ten opportunities (Id. ¶ 41). Between January and December 2003,
12   Plaintiff had "at least thirty-six hours of yard time, and refused yard eleven times" (Id. ¶ 42).
13    On July 29, 2004, Plaintiff filed his Complaint with United States District Court in the
14   Eastern District of California (Dkt. 1, Pl.'s Compl.). Plaintiff subsequently amended his
15   Complaint four times, on June 21, 2005, March 8, 2006, December 12, 2006, and July 17,
16   2007, respectively  (Dkts. 11, 18, 30, 37). On November 25, 2008, the case was reassigned
17   to the undersigned judge in the District of Arizona (Dkt. 71).

## STANDARD OF REVIEW

19    A court must grant summary judgment if the pleadings and supporting documents,
20   viewed in the light most favorable to the nonmoving party, "show that there is no genuine
21   issue as to any material fact and that the moving party is entitled to judgment as a matter of
22   law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)
23   (citing Fed. R. Civ. P. 56(c)); Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th
24   Cir. 1994) (citation omitted). Substantive law determines which facts are material. See
25   Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130.
26   "Only disputes over facts that might affect the outcome of the suit under the governing law
27   will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.
28   Genuine evidence must be "such that a reasonable jury could return a verdict for the

1 nonmoving party." Id. If the evidence most favorable to the nonmoving party blatantly
2 contradicts the record, "so that no reasonable jury could believe it, a court should not adopt
3 that version of the facts." Scott v. Harris, 550 U.S. 372, 380 (2007). At the summary
4 judgment stage, once a court determines "the relevant set of facts and [has] drawn all
5 inferences in favor of the nonmoving party *to the extent supportable by the record*" whether
6 the parties have met their burdens is a pure question of law. Id. at 381 (emphasis in original).

7 A principal purpose of summary judgment is "to isolate and dispose of factually
8 unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate
9 against a party who "fails to make a showing sufficient to establish the existence of an
10 element essential to that party's case, and on which that party will bear the burden of proof
11 at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir.
12 1994). The moving party need not disprove matters on which the opponent has the burden
13 of proof at trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment
14 need not produce evidence "in a form that would be admissible at trial in order to avoid
15 summary judgment." Celotex, 477 U.S. at 324. The nonmovant "may not rely merely on
16 allegations or denials in its own pleading, rather its response must . . . set out specific facts
17 showing a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co.,
18 Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Beard v. Banks, 548 U.S. 521, 529
19 (2006).

20 **DISCUSSION**

21 Defendants filed their Motion for Summary Judgment on December 5, 2008, moving
22 for summary judgment on three issues: 1) Defendants "did not deprive McKinney of outdoor
23 exercise"; 2) "McKinney received sufficient exercise time in spite of the security threat that
24 he posed"; and 3) Defendants have qualified immunity, since their actions did not violate any
25 clearly established laws (Dkt. 76).

**I.      Motion to Exclude**

Attached to Plaintiff's Opposition to Defendants' Motion for Summary Judgment is a document titled "Plaintiff's Motion to Exclude Pursuant to Federal Rules of Evidence 403." (Dkt. 83).  To the extent that this filing is a separate motion, the Court will now address it.

In his Motion to Exclude, Plaintiff requests an evidentiary hearing regarding the potential exclusion of criminal cases CF-9861 and YA036162 mentioned in Defendants' summary judgment motion.  Plaintiff argues that good cause exists for the withdrawal of his guilty plea because it was entered involuntarily and was not a product of his free will. Additionally, Plaintiff claims that his conviction resulted from ineffective assistance of counsel.  Plaintiff also seeks the exclusion of CDC 115Violation Report because the report was falsified by a Officer Hood.

Plaintiff's criminal convictions are not at issue in the present section 1983 suit in which Plaintiff alleges that he was denied sufficient outdoor exercise.  Defendants attach information regarding Plaintiff's convictions only to show why Plaintiff was placed in SHU and assigned single-cell and walk-alone status, not to discredit Plaintiff's character.  This purpose is permissible as it does not require the Court to engage in a credibility determination.  Therefore, the evidence will not be excluded, and no evidentiary hearing is necessary.

**II.     Motion for Summary Judgment**

   **A.     Eighth Amendment Claim for Denial of Exercise**

Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege or immunity protected by the Constitution or laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986); Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991) ("The requirements for relief under section 1983 have been articulated as (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of

1  state law.")  As neither party has disputed that the prison officials were acting under color
2  of state law, the case turns on whether Defendants' conduct deprived Plaintiff of his rights
3  under the Eighth Amendment.

4       "A person deprives another 'of a constitutional right, within the meaning of section
5  1983, if he does an affirmative act, participates in another's affirmative acts, or omits to
6  perform an act which he is legally required to do that *causes* the deprivation of which [the
7  plaintiff complains].'"  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis in
8  original) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978)).  Plaintiff can show
9  the causal connection by showing direct participation in the event, or by "setting in motion
10 a series of acts by others that [Plaintiff] knows or reasonably should know would cause
11 others to inflict the constitutional injury."  Johnson, 588 F.2d at 743-44.  To determine
12 causation, courts engage in an individualized and focused inquiry into the duties and
13 responsibilities of each defendant who is alleged to have caused a constitutional deprivation.
14 Leer, 844 F.2d at 633.

15      A prisoner can state a section 1983 claim against prison personnel under the Eighth
16 Amendment by establishing that the prison personnel acted with "deliberate indifference"
17 in creating the condition that violates the Eighth Amendment.  Farmer v. Brennan, 511 U.S.
18 825, 834 (1994).  Thus, in order to prevail and recover damages on a section 1983 claim
19 under the Eighth Amendment, a prisoner must prove "(1) that the specific prison official, in
20 acting or failing to act, was deliberately indifferent to the mandates of the eighth amendment
21 and (2) that this indifference was the actual and proximate cause of the deprivation of the
22 inmates' eighth amendment right to be free from cruel and unusual punishment." Leer, 844
23 F.2d at 634 (citations omitted).

24      Defendants argue that they "did not have the authority to regulate the amount of
25 outdoor exercise time McKinney received while in CCI Facility IV A" (DSF ¶ 7).  In support
26 of this assertion, Defendants state that their responsibility was merely "analyzing [Plaintiff's]
27 central file, meeting with him, and preparing a recommendation on his housing placement
28 and exercise yard status (Dkt. 76, 2:17-20, DSF ¶ 4)."  Defendants further argue that the ICC

1 considers Plaintiff's disciplinary record and Defendants' recommendations before making
2 a final determination regarding Plaintiff's housing placement and exercise yard status (Dkt.
3 76, 2:22-27).  Moreover, Defendants state that correctional officers, not correctional
4 counselors, managed the amount of exercise time available to Plaintiff (Id. at 3:1-5).  Thus,
5 Defendants argue that causation is lacking between their actions and any constitutional
6 violation.

7 Plaintiff's response and evidence focuses on two arguments. First, Plaintiff contends
8 that Defendants caused Plaintiff to continue to suffer at CCI after notice of his grievance of
9 lack of exercise (Dkt. 83, 4:5-15).  Second, Plaintiff claims that Defendants acted with
10 deliberate indifference because all employees of CCI are responsible for the health and well-
11 being of inmates (Id. 5:19-28).

12 As far as the Court can discern, Plaintiff's first allegation is that Defendants were
13 deliberately indifferent because they did not provide more yard time after Plaintiff filed a
14 formal complaint.  Plaintiff fails to provide specific facts which demonstrate this knowing
15 indifference.  At the most, Plaintiff shows and Defendants admit that they recommended that
16 Plaintiff be placed on walk-alone status (DSF ¶ 14, 17, 24-25,27; Dkt. 83-2, ¶ 14, 17, 24-25,
17 27).  However, Defendants clearly show that CCI gave this status designation to high-
18 security inmates (DSF ¶¶ 9, 15, 16-17, 24, 26-27).  Plaintiff does not show that Defendants
19 had the authority or duty to evaluate grievances or adjust the amount of yard time a prisoner
20 receives.

21 Defendants made the recommendation to place Plaintiff on walk-alone status based
22 upon prior offenses.  Because the availability of outdoor space for exercise is a custody and
23 security issue, the correctional officers that managed Plaintiff's housing unit determined the
24 amount of outdoor exercise time Plaintiff received (Buentiempo Decl. ¶ 15; Casey Decl. ¶
25 14). Correctional Officers Lieutenant Hopkins and Lieutenant Zanchi substantiate this claim
26 by noting that correctional officers decided "the amount of exercise to be provided to
27 inmates" (Hopkins Decl. ¶ 7; Zanchi Decl. ¶ 7).  Moreover, Plaintiff states in his deposition
28 that correctional officers released him into the yard and not Defendants or any other

1  correctional counselor (Dkt. 76, Ex. 8, McKinney Dep. 76: 5-10). Ultimately, Defendants'
2  job duties as correctional counselors required that they make recommendations to the ICC,
3  not that they determine the frequency of outdoor exercise time.  As a result, Plaintiff has not
4  shown that Defendants acted with deliberate indifference.   Thus, the Court finds that there
5  is no genuine factual dispute and thus can grant summary judgment on this issue.

6  Plaintiffs second argument also fails to illustrate a genuine issue of material fact.
7  Plaintiff argues that under California Code Regulations title 15, section 3271, "every
8  employee . . . is responsible for the safe custody of the inmates" (Dkt. 83, 5:19-21).
9  Defendants correctly note that Plaintiff's case is not about his safety, but rather about the
10 alleged deprivation of exercise (Dkt. 86, 3:9-10). Moreover, just because Defendants did not
11 follow a California statute does not mean that they violated section 1983.[5]

12 Under section 1983, Plaintiff must demonstrate that Defendants' actions caused a
13 deprivation of his constitutional rights.  Moreover, the individual defendant must be in a
14 position to avert the deprivation, but did not do so intentionally or with deliberate
15 indifference. Leer, 844 F.2d at 633. Implicitly, if Defendants did not have the authority to
16 act and did not act in some way that was substantially certain to deprive Plaintiff of a right,
17 they were not deliberately indifferent.

18 Even construing the evidence liberally in Plaintiff's favor and making all possible
19 inferences, Plaintiff fails to yield any evidence that Defendants' actions impacted
20 Plaintiff's time in the exercise yard.  Moreover, nothing illustrates that Defendants were
21 deliberately indifferent to Plaintiff's rights.  Thus, the Court finds that Plaintiff failed to
22 show a genuine issue of material fact as to Defendants' deliberate indifference.

---

[5] See Leer, 844 F.2d at 632-33 (holding that relief under section 1983 requires Plaintiff to show Defendant's act caused a deprivation of a constitutional right); Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995) (stating that section 1983 provides a cause of action against persons acting under color of state law who have violated rights guaranteed by the Constitution).

Defendants argue that they are free from liability for two additional reasons: (1) "McKinney received sufficient exercise time in spite of the security threat that he posed"(Dkt.76, 8:26-10:23); and (2) Defendants have qualified immunity, since their actions did not violate any clearly established laws (Dkt.76, 10:27-12:2).  Since the Court finds that summary judgment is appropriate, a discussion of these remaining issues is unnecessary.

### B.  Eighth Amendment Claim for Failure to Train

In Plaintiff's Fourth Amended Complaint, he seemingly asserts a claim for Defendants' failure to properly supervise and train subordinate correctional counselors in regards to Plaintiff's exercise time (Doc. 37).  To the extent that Plaintiff is suing Defendants for a failure to supervise or train their subordinate employees, Plaintiff has not stated a claim for relief.  "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009).  Liability cannot be imposed on Defendants for violations arising from their supervisory responsibilities in the absence of Defendants themselves taking actions that violate the Constitution.  Id. at 1948-49.  Mere knowledge by a supervisor of his subordinate's discriminatory purpose is not sufficient to find that the supervisor violated the Constitution.  As a result, Plaintiff's claim for failure to supervise and train will be dismissed as well.

### CONCLUSION

The Court will grant summary judgment for Defendants because after viewing all evidence in the light most favorable to Plaintiff, "there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c). Plaintiff's Eighth Amendment claim requires that named Defendants were deliberately indifferent to Plaintiff's rights.  It is apparent that Defendants' duties and responsibilities did not include giving Plaintiff yard access, nor did they include ensuring that Plaintiff received yard time.  Without the requisite causation, the Court finds that Plaintiff failed to meet his burden under Rule 56, and grants summary judgment in favor of Defendants.

Accordingly,

**IT IS HEREBY ORDERED GRANTING** Defendants' Motion for Summary Judgment (Dkt. 76).

**IT IS FURTHER ORDERED DENYING** Plaintiff's Opposition Motion to Defendants' Motion for Summary Judgment (Dkt. 83).

**IT IS FURTHER ORDERED** that the Clerk of Court shall terminate this case.

DATED this 3rd day of August, 2009.

Stephen M. McNamee
United States District Judge